The final case on our call, the docket for today, Tuesday, November 16, 2010, is agenda number 15, case number 109738, Kristen Kaufmann versus Roger Schroeder, M.D. in the Jersey Community Hospital. Agenda number 15. Counsel? Good afternoon, your honors. My name is Jacqueline Brandenburg-Reese, and I represent the appellant Kristen Kaufmann in this action. May it please the court, counsel? This is an action which calls upon this court to interpret a statute that has heretofore not been interpreted by this court. And for that reason, it's a case of first impression where the appellate court and both of the parties in this case relied upon prior decisions of this court in 2007, the Brucker case and the Orlock case, as well as relying on appellate court decisions which interpreted similar language appearing in another statute. In this case, the trial court and the appellate court ruled that there was a one-year statute of limitations pursuant to the Tort Immunities Act that barred the claims of the plaintiff against the defendant community hospital. We respectfully request that this court reverse the decision of the trial court and the appellate court because the trial court and the appellate court mistakenly failed to consider that the plaintiff's injuries in this case, in fact, did arise out of patient care. And that being the case, it is subsection B of section 101 of the Tort Immunities Act that applies and not subsection A. Subsection B prescribes a two-year statute of limitations for actions against a public entity for damages for injury or death, whether by tort, breach of contract, or otherwise, arising out of patient care. Ms. Reese? Yes. How can you say it was rising out of patient care when it was not part of the patient's treatment in light of traveler's casualty and surety v. Bowman? Your Honor, I think that you have to look at the context of the treatment and not separate out each element of what the doctor did. Under the auspices of legitimate patient care, the patient went to her OBGYN, who she had treated with for a couple of years prior to the incident in question. She was pregnant. She had a urinary tract infection. It was proper for her to go to her OBGYN. It was proper for the OBGYN to attempt to treat that medical condition. He legitimately hospitalized her. And during the course of the hospitalization, he undertook to perform an examination. Clearly up to this point, all of that constitutes patient care. He sedated her. We allege that he sedated her for an improper purpose. We've not developed the discovery in the case, but potentially there was another purpose for sedating her. We don't know at this point. But as a part of the plan that he had to seduce her or to molest her, he took advantage of her under the sedation and committed the deviant sex act. Does it matter whether this case is out of ordinary negligence or medical malpractice in order to rise out of patient care? I think not, Your Honor. If you look at this Court's prior decisions in Orlock and Brucker, one of those where the allegations were concerning fraud for a hospital failing to notify the patient that the patient received hepatitis tainted blood for a period of 11 years. This Court said it matters not what you call the action, how you characterize the action. What matters is that it arose throughout the course of the patient care. And the same reasoning and holding was found in the Orlock case. Strike that in the Brucker case. And there a physician's assistant mistakenly filled a bottle of nutritional supplements with the it matters not whether we're viewing this case as medical malpractice or whether we're viewing it as ordinary vendor negligence. What we are to concern ourselves with is whether that misconduct and that injury arose out of patient care. How do you address opposing counsel's argument that they've made that if this Court was to find that an intentional sexual assault arises out of patient care, that there's every scenario, that that determination in and of itself would open the door to anything done by a doctor to a patient in a hospital? Well, I think there's two facets to your question. One is intentional and the other part is sexual. Certainly this Court and the appellate courts have previously ruled that intentional conduct can be conduct arising out of patient care. And I give the example of a physician who in order to generate additional incomes decides that he is going to perform an unnecessary hysterectomy or, as I've cited in my brief in one of the cases, perform an unnecessary eye surgery. That's an intentional act, yet it still comes under the statute, you know, 212, arising out of patient care. Right, but let me just interrupt a little bit. No one would quarrel, though, in the scenario that you just came up with, whether it was medically necessary or not that a hysterectomy would be patient care, right? Well, in the example I gave, it was not medically necessary to perform the hysterectomy. That's what I said, medically necessary or not. There was a hysterectomy performed and therefore whether or not it's medically necessary or not, it's different than what we have here. I mean, you wouldn't call the touching in and of itself to be patient care. You're saying the touching occurred during patient care, right? Isn't that more your argument today? The touching arose out of the patient care. My question isn't as detailed as that. What the opposing counsel is basically saying is that if this act would be found by this court to be patient care because it arose out of at the time of patient care, wouldn't everything come out of that, no matter what a doctor did in the hospital? A doctor has someone admitted to the hospital. They're at the emergency room entrance and they're filling out their paperwork. And the doctor who admitted the person in comes in and does the same touching that they did here in that context. That would have to be patient care because the patient is being admitted to the hospital for presumably some type of procedure. Well, Your Honor keeps referring to it as patient care. I don't characterize it that way. I characterize it as an act arising out of patient care. I don't think there is the danger of opening a floodgate of litigation for every doctor that improperly touches a patient. And the example comes to mind, a woman goes to her physician's office for whatever purpose. He locks the door and rapes her. I don't contend that that is a sexual assault arising out of patient care. In this case, however, what we have is a series of events that were legitimate patient care which placed this plaintiff in a very vulnerable position. And she had no reason to suspect or be on guard or ward against any advances because everything the doctor was doing up to a point was patient care. Let's use your example. If the doctor who raped the patient in his office had taken the patient's blood pressure and vitals and then raped her, is that patient care? Well, it's a fine line. And I think that the court has to look at the context of every case. Let's say in the example that Your Honor just gave me, that may not be far enough. But for example, as I think was the case in one of the cases cited by the defendant, the Florida case, the patient goes to an osteopath for complaints of headache and vertigo. And he tells her, put on a gown and lay face down on the table. She has no reason to suspect that that is not a part of proper care. In the course of his examination of her back, then he violently thrusts his hand into her genitals and her rectal area. That, in my estimation, would be an injury arising out of patient care. I guess our problem and the reason I'm so interested in you addressing that question, which will certainly come up, is that rarely do we have the benefit of issuing opinions that are based on only the facts of the particular case, right? And presumably we don't even take cases in which that's the reason that we took the case. So I'm just trying, I think it's an important question that if the determination of this court would be that if an intentional act, in this case an intentional sexual act by a doctor is arising out of patient care, will that virtually in every case, outside of maybe a few examples, mean that any of those acts would constitute arising out of patient care to which the two-year statute would apply? That's my question. I don't mean to answer it, but I think it's fair since it's important to me that you have a chance, and that's why I spent some time on it. Well, I think the cases are helpful because they talk about the act being causally connected to the medical care. And in the example I gave where the woman merely enters the doctor's office and he attacks her and rapes her, is that causally related to some treatment she was receiving at the time? I think not. Also helpful... But also to follow up on Justice Thomas' question is that what are the boundaries that we would actually have for writing an opinion on, in your opinion, that's not causing, you know, and in somebody else's it might be not arising out of patient care. So I mean, I think it's hard to picture a decision that would be void of any boundaries except in this particular case. I understand the problem that Your Honor is posing. My response to that is that this Court would have to look at where the intentional act was inextricably, as Justice Myerscough stated in her dissent, inextricably connected to the patient care. And that would not be every case, as we've just alluded to in some of the examples here. In Brucker, this Court stated that patient care, and I'm not maintaining that sexual touching is patient care. However, what this Court said was the entire scope of the medical care and treatment has to be viewed. And that's the measure of what needs to be looked at here. Not what the doctor's motive was, as the defendant suggests the Court should look at. But, you know, take it in context of the entire medical care and whether the patient care was patient care. What the physician did was a natural consequence of his placing her in such a vulnerable position that the actions that he did in getting her to the point where he could sexually abuse her were patient care. And did you say earlier that putting her under sedation was or was not part of patient care? Well, traditionally, we would think that a physician sedating a patient is patient care. None of us can legitimately do that in a hospital setting. So I would say that, yes, that was patient care. And then the next question is, do we have to look at the doctor's motive in doing that? But you just said not to use the intent. Yes. Yes. Yes. Once again, what I think this Court, you know, needs to look at is whether or not the doctor whatever injury is alleged, be it fraud or battery or medical malpractice, whether that arises out of patient care. And in this instance, we maintain that the injuries and the damages did arise out of the patient care. And so respectfully, appellant asks that this Court reverse the decision of the appellate court and remand the case for further proceedings. Thank you. Thank you, counsel. Counsel for the appellee.  My name is Judy Bostrom. I represent Jersey Community Hospital District in this case. The only issue before this Court is whether the act of sexually assaulting a patient by a physician in a hospital is an injury that arises out of patient care, which would subject this to the two-year statute of limitations as opposed to the one-year statute of limitations under the Tort Immunity Act. The trial court held that the case was about sexual battery and that the allegations against the hospital as a public entity were subject to the one-year statute of limitations. The appellate court held that the sexual assault on the patient did not constitute patient care and that the patient's injuries as a result of the sexual assault did not arise out of patient care, and therefore, the case was dismissed based on the one-year statute of limitations for the tort immunity. Now, by way of background, there is no dispute that Jersey Community Hospital District is a public entity, and as a public entity, it is subject to the Tort Immunity Act. The statute for Tort Immunity 8101 provides that actions against public entities must be brought within one year. That statute was amended in 2003. In June of 2003, the statute was amended to provide an exception to injuries arising out of patient care would have a two-year statute of limitations. In amending that statute, the legislature put similar wording into Section B of that statute, the arising out of patient care language that is similar to 212, I'm sorry, 13-212, which is called the, sometimes called the medical malpractice statute of limitations or the statute of limitations against doctors and hospitals. In determining that this act did not arise out of patient care, that this patient's claimed injuries did not arise out of patient care, the Court of Appeals looked at this court's case of first impression in Brucker and Mercola. And as counsel stated, this is a case of first impression before this court. No court has actually looked at 8101B of a Tort Immunity Act. In looking at the cases of Brucker and Mercola, the two Supreme Court cases, this court held that the arising out of patient care language under 212, 13-212, there had to be some causal relationship between the injury and the care and treatment of the patient. The court also held that that would cover any injuries that had their origin in or were incidental to the patient's care and treatment. The exception to this, however, was that if the only connection between the patient's treatment and the injury is that the patient would not have been at the place where the injury occurred, but for the treatment, that that would not be considered an injury arising out of patient care. Now in this case, the patient was injured. The patient was in a hospital. She was sexually assaulted. And what the patients have actually pleaded is that there was unnecessary sedation and examination. That is unnecessary sedation I think is a nice way of saying she was given a drug to knock her out so that she could be sexually assaulted. The examination I think counsel would admit of touching her improperly did not constitute an examination. The injuries that she's alleged as a result of this improper act, this criminal act, is emotional distress. She was in the hospital for treatment. She's pregnant. She's in the hospital for treatment of a urinary tract infection. There's no allegations at all in this complaint that her x-rays were done improperly, her urine tests were done improperly, her medications were provided improperly. The only allegation is that as a result of this unnecessary sedation and unnecessary examination that she was sexually assaulted. Under this court's decision of Mercola v. Bucker, the only way that this court could find that these patients were sexually assaulted, that these acts of sexual assault on this patient constituted an injury arising out of patient care would be to hold that this is but for causation. And this court has declined to do that in the Bucker case and also in the Orlet case. How do you distinguish fraudulent surgery in Walsh v. Berry Harlan Corporation, which was found to be rise out of patient care different from the sexual deviant act in this case? In the Walsh case, the case was initially brought under, initially brought as a medical malpractice cause of action, and because it was not brought in time, it was dismissed. So it was recharacterized then as a consumer fraud act so that it could fall under a different statute of limitations. I think it was a three-year statute of limitations as opposed to a two-year statute of limitations. But the court in looking at the Walsh case and in applying the precedent of 13212, 13212 is not just for med mal, 13212 is for actions against doctors and hospitals and nurses. And in essence, because the act of determining, making a judgment in a patient and the action was against a physician or hospital, that was why they held that it rose out of patient care. Because it was, whether you call it fraudulent, I'm sorry, whether you call it consumer fraud or medical malpractice, which it was not, the court determined that it was an action against a health care provider and the two-year statute of limitations rose out of patient care, which is typically surgery, putting in eye implants, those are typical surgical things. The court had some questions, some line-drawing questions of plaintiff's counsel. The question about somebody going to a doctor's office and getting their blood pressure taken and then being raped, that was a question that the court had raised. I don't, that does not arise out of patient care. That is an intentional sexual assault. But for that patient's being at her doctor's office getting her blood pressure taken, she was sexually assaulted. And that's the same as the instance in the Kauffman case. But for her being present in the hospital for actual medical care and treatment, she was knocked out with a drug and intentionally sexually assaulted by her physician. And that takes that particular, her injuries out of the statute. And we're talking about the application of the one-year statute from the Tory Immunity Act, which this court is looking at today for the first time, but applying it to the precedent under 212B, I'm sorry, under 13212, the court should hold that this particular physician's actions were not patient care. There's no way that this could have been patient care. And that seeking and strickling with the statute, the legislature could have made the tort immunity statute a little broader. They could have said that all actions against doctors, hospitals, and nurses who are public entities will be two years. That's not what they said. They said that all the actions against public entities will be one year, except for the injuries arising out of patient care. So I think that statute is a little bit narrower than 13212 in the application to public entities. I think the counsel, from what you said, that you're saying sexual assault can never be patient care. So if there's a sexual assault involved, not patient care. Is that accurate? Or am I missing something? I think if we look at the strict interpretation of the statute, Your Honor, it says injuries arising out of patient care Right. So are you saying that sexual assault can never be patient care? Is that what you're saying? No. Yes, exactly. It is not patient care. It cannot be patient care. So under your view of this, you would look to the act committed against the person or party to determine whether or not that was arising out of patient care? Well, I think it's two things. You could look at the act that is pleaded against the person, and you could also look at the injuries that the person sustained. How so? Your Honor, I guess it's possible. I mean, I've tried to think of different scenarios that would apply on the line drawing issue. I guess it's possible there could be a count against a physician for medical malpractice. That is separate than a count against a physician for sexual assault. In which case the sexual assault would not arise out of patient care. If there were other allegations, potentially those could arise out of patient care. But sexual assault, no. And not the way this case is pleaded. So if the physician had injured the person in doing some kind of a scan or a test or examination while she was unconscious, but it wasn't a sexual assault, that would arise out of patient care. But when he goes further and commits a sexual assault, that takes it out of patient, arising out of patient care? Exactly. To follow up on Justice Garment's question, then, you almost have to look, as opposed to what Ms. Reed said, to the intent of the actor, the doctor, what he intended to do when he assaulted. I suppose every surgery can be considered an assault, but a sexual assault here is one that he had to intend to do. Is that not right? Or don't you look at the intent of the actor? There could be, I think that the sexual assault specifically You can have a sexual assault without intending to commit a sexual assault? No. I don't think you can have a sexual assault without intending to commit a sexual assault. I think you can have a battery on a patient that could be characterized as an injury arising out of patient care that did not result in which it could potentially fall under the malpractice. But that's malpractice. Right. But we're talking about this sexual assault. You have to look to the intent? I think in this particular case, the way this case is pleaded, the only injuries that she has alleged were injuries that arose out of the sexual assault. And so strictly applying the language of the statute against a public entity for injuries arising out of patient care, the answer is no. Because these injuries that she suffered did not arise out of patient care. They arose out of criminal sexual assault. And that's why this case is subject to the one-year statute of limitations and not the two-year statute of limitations. If there are... Well, counsel, let me follow up on Justice Garmon's question. Maybe you've already answered my question. Are you saying that if you take the allegation of the sexual conduct, contact, out of the allegations, that it still falls, would then fall within 8101B? This complaint? Yes. No, Your Honor, I'm not... All right, let's back up. Procedural posture in this case, it's a motion to dismiss. It's a First Amendment complaint. It counts 4 through 10. Correct. And I looked at 4 through 10, and as they've argued in the brief, part of the allegation is it was an unnecessary sedation, unnecessary examination, whatever that is. But it comes to us on a pleading issue. So let's take the sexual contact conduct out, unnecessary sedation, unnecessary examination. Does that allege an 810B, 8101B claim? I don't think you can take that conduct out of this petition, Your Honor. I just want to know what the answer would be to that question. Because can you really separate all the allegations out and say because the sexual conduct is there, it destroys all the rest of the allegations? Do we not look at all the allegations in the complaint in those counts, 4 through 10? I guess that's the heart of my question. Yes, and I think you should look at all the allegations in count 4 through 10, but I think that predominantly the injury that is alleged in this case, which is what the trial judge and the court of appeals focus on, was that the injury itself arose from criminal sexual assault. The injury did not arise out of patient care, and that is the reason that this case is subject to the one-year statute of limitation under the Tort Immunity Act, because of the injuries that are alleged. And like I said, the examination, the unnecessary sedation, I think those are a nice way of saying drugging somebody and sexually assaulting them, and they don't rise to a level of alleging patient care. And for those reasons, Your Honors, if there aren't any other questions, I would respectfully request that this court affirm the appellate court. Thank you very much. The counts against the hospital specifically allege that the plaintiff's injuries arise out of medical treatment she received from Jersey Community Hospital, and I can point to 39 in count 4, for example, and I think if you look in the next couple of counts, there is a similar allegation, not that the injuries arose from the sexual assault, but from the entire medical care. There are a couple of points that I wanted to make here. This is not but-for causation. Dr. Schroeder was not a neutral force. But-for causation would be a situation where a woman goes to the hospital and a wall collapses on her. Here we have Dr. Schroeder and the hospital for providing the forum for Dr. Schroeder to do what it is he would do to his female patients. We have something more than but-for causation. How was the plaintiff or how is it alleged that the plaintiff was injured here apart from the sexual assault? Well, the plaintiff has alleged emotional distress as a result of the care she received, which includes the touching. But as the dissent said, when you look at a situation of a male patient, let's say, who had, you know, a rectal exam with some unnecessary sedation, how can you say what his damages flow from? Is it the actual act? Is it the fact that he was vulnerable and taken advantage of? Is it the fact that he was sedated? It's probably very difficult to accurately assess what the origin of the emotional damages are. I think it encompasses the entire treatment. In answer to your question, Justice Garmon, as to whether a sexual assault can ever be deemed patient care, I believe that was the question you posed. I think the answer to that is yes. And there are cases where, for example, a sex therapist or a psychologist counseling a married couple decides that he will attempt to cure the wife's frigidity by prescribing a course of treatment whereby he has sexual relations with her, so that then she is more sexually active with her husband. That can be viewed as medical malpractice. It can be viewed as misplacement of the transference phenomenon. It can be viewed as battery, lack of informed consent, or sexual assault. So it's difficult to separate out in each case what act it is when there are a series of acts that cause the patient damages. In Orlock, where the plaintiff alleged that the hospital had a duty to notify of the tainted blood transfusion and the breach of that duty, this is a case where the patient had that duty and breach flowed from the care that the patient received. Here the same analogy can be made. Did not Dr. Schroeder have a duty not to sexually assault his naked female patients? Did not the hospital have a duty to provide a female chaperone in a room when a male doctor is examined? Did not the hospital have a duty if, as we have alleged on information and belief, they had knowledge that Dr. Schroeder was unfit to be examining female patients? Do not those duties and the breaches of those duties flow from the patient care? And as to whether... Well, I view but for as there being no causal connection to, in this instance, patient care. Just the mere happenstance of someone walking into a dentist office or walking into a hospital and slipping and falling on a substance on the floor. That is how I view the but for causation. And we have so much more in this case. As to the question about the intentional conduct, Miller v. Tobin was a second district case where a psychiatrist revealed confidential communications of the wife to the wife's husband after the treatment concluded. And the court found that that was an intentional breach of confidence. An intentional act. Nonetheless, the court held that that breach of confidence subjected or came within the purview of 212 where there was a two-year statute of limitations and not breach of contract with a longer statute and not violation of the Mental Health Confidentiality Act. So in that case, and I submit in this case, the court does not have to look at whether the act is intentional or not. Because clearly based upon the case law, even intentional acts can be those arising out of patient care. Thank you so much for your time and patience, your honors. Thank you.